## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES COMMODITY**
**FUTURES TRADING COMMISSION,**

           **Plaintiff,**

**v.**                                                    **Case No:  8:17-cv-213-T-24MAP**

**ANTHONY J. KLATCH II, LINDSEY**
**HEIM, and ASSURANCE CAPITAL**
**MANAGEMENT, LLC,**

           **Defendants.**
_____

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**    This action came before the Court and a decision has been rendered.

         **IT IS ORDERED AND ADJUDGED**

**A.     Permanent Injunction**

1.  Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants Assurance Capital
    Management, LLC ("ACM") and Lindsey Heim are permanently restrained, enjoined and
    prohibited from directly or indirectly:

    a.     Willfully cheating or defrauding, or attempting to cheat or defraud, other persons in or
           in connection with any order to make, or the making of, any contract of sale of any
           commodity for future delivery that is made, or to be made, for or on behalf of, or with,
           any other person in violation of Section 4b(a)(1)(A) of the  Commodity Exchange Act
           (the "Act"), 7 U.S.C. §§ 6b(a)(1)(A) (2012);

    b.     Willfully making or causing to be made false statements or reports to another person
           in connection with any order to make, or the making of, any contract of sale of any
           commodity for future delivery that is made, or to be made, for or on behalf of, or with,
           any other person in violation of Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b (a)(1)(B)
           (2012);

c.      Willfully cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction in violation of Section 4c(b) of the Act, 7 U.S.C. §§ 6c(b) (2012), and Regulation 33.10, 17 C.F.R. § 33.10 (2016);

d.      Willfully making or causing to be made false statements or reports to another person in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 33.10, 17 C.F.R. § 33.10 (2016);

e.      While acting as a Commodity Pool Operator ("CPO"), or Associated Persons ("APs") thereof, employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012); and

f.      Intentionally or recklessly using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; making, or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Commodity Futures Trading Commission ("Commission") Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016).

2

2.  Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendant Anthony Klatch permanently restrained, enjoined and prohibited from directly or indirectly:

   a.  Intentionally or recklessly using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; making, or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in connection with any swap, or contract of sale of any commodity in interstate  commerce, or contract for future delivery on or subject to the rules of any registered entity, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012),  and Regulation 180.1(a), 17 C.F.R. §180.1(a) (2016).

3.  Defendants ACM and Heim, and its and her affiliates, agents, servants, employees, successor, assigns, attorneys, and all person in active concert with them, are also permanently restrained, enjoined and prohibited from directly or indirectly:

   a.  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

   b.  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016)) for their personal account or for any account in which they have a direct or indirect interest;

   c.  Having any commodity interests traded on their behalf;

   d.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and/or

g.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

4. Defendant Klatch and his affiliates, agents, servants, employees, successor, assigns, attorneys, and all persons in active concert with him, are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016) for his own personal or for any account in which he has a direct or indirect interest;

b.     Having any commodity interests traded on his behalf;

c.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests; and/or

d.     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests.

5. Defendant Klatch must make the following written disclosure in connection with any speech, presentation, website, mailing, or other readable material that he or any agent creates, makes, provides, operates, or sends relating in any manner to commodity interests:

4

"I have violated the Commodity Exchange Act and CFTC Regulations. After being sued by the CFTC in federal courts in New York and Florida, I have been collectively ordered to pay $13,476,225 in restitution to victims of my illegal conduct. I have also been ordered to pay $1,845,008 in civil monetary penalties for my illegal conduct. In addition, I have been permanently enjoined from, among other things:   1) entering into any transactions involving commodity interests; 2) controlling or directing the trading for or on behalf of any other person or entity in any account involving commodity interests; or 3) soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests.   Case numbers for the CFTC actions against me are: U.S. District Court for the Southern District of New York, 11-cv-5191, and U.S. District Court for the Middle District of Florida, 17-cv-213."

**B.  Restitution**

6.  Defendants shall, jointly and severally, pay restitution in the amount of $459,613 (four hundred fifty-nine thousand, six hundred thirteen dollars), plus post-judgment interest.  Defendant Klatch shall also pay an additional $96,873 (ninety-six thousand, eight hundred seventy-three dollars) in restitution (such that Klatch's total restitution obligation is $556,486 (five hundred fifty-six thousand, four hundred eighty-six dollars)) (collectively "Restitution Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue on Defendants' Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

7.  Defendant Klatch and Heim are currently the defendants in criminal actions charging them, in part, for the misconduct that is at issue in this matter.  *See United States v. Klatch*, Case No. 17-cr-00135-JDW-JSS, United States District Court for the Middle District of Florida; *see also United States v. Heim*, Case No. 17-cr-00071-SDM-AEP, United States District Court for the Middle District of Florida ("Criminal Actions").  For amounts disbursed to Defendants' customers, pool participants, or clients as a result of satisfaction of any restitution ordered in the Criminal Actions, the Defendants shall receive a dollar-for-dollar credit against the Restitution Obligation.  Within ten (10) days of disbursement in the Criminal Action to Defendants' customers, pool participants, or clients, Defendant shall, under a cover letter that

identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, copies of the form of payment to those customers, pool participants, or clients.

8.   To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' customers, pool participants, or clients, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall collect restitution payments from Defendants and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

9.   Defendants shall make Restitution Obligation payments under this Order to the Monitor in the name "Klatch, Heim, and Assurance Capital Management Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendants and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

10.  The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers, pool participants, or clients identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers, pool participants, or clients

is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

11. Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' customers, pool participants, or clients to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

12. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers, pool participants, or clients during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

13. The amounts payable to each customer or participant shall not limit the ability of any customer or pool participant from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

14. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer or participant who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

15. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' restitution obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

## C.      Civil Monetary Penalty

16. Defendants shall pay, jointly and severally, a civil monetary penalty of $1,509,552 (one million, five hundred nine thousand, five hundred fifty-two dollars), plus post-judgment interest.  Klatch shall also pay an additional civil monetary penalty of $335,456 (three hundred thirty-five thousand, four hundred fifty-six dollars) (such that his total civil monetary penalty obligation is $1,845,008 (one million, eight hundred forty-five thousand, eight dollars) (collectively, "CMP Obligation"). Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

17. Defendants shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding.   Defendants shall

simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW,

Washington, D.C. 20581.

**D.    Provisions Related to Monetary Sanctions**

18. Partial Satisfaction:  Acceptance by the Commission/CFTC or the Monitor of any partial

payment of Defendants' Restitution Obligation or CMP Obligation, shall not be deemed a

waiver of their obligation to make further payments pursuant to this Order, or a waiver of the

Commission/CFTC's right to seek to compel payment of any remaining balance.

**E.    Miscellaneous Provisions**

19. Notice:  All notices required to be given by any provision in this Order shall be sent certified

mail, return receipt requested, as follows:

Notice to Commission:

> Charles Marvine
> Deputy Director, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 4900 Main Street, Suite 500
> Kansas City, MO 64112
> (816) 960-7700

Notice to NFA:

> Daniel Driscoll, Executive Vice President, COO
> National Futures Association
> 300 S. Riverside Plaza, Suite 1800
> Chicago, IL 60606-3447

All such notices to the Commission shall reference the name and docket number of this action.

20. Change of Address/Phone:  Until such time as Defendants satisfy in full the Restitution

Obligation and CMP Obligation as set forth in this Order, Defendants shall provide written

notice to the Commission by certified mail of any change to their telephone number and

mailing address within ten (10) calendar days of the change.

21. Invalidation:  If any provision of this Order or if the application of any provision or

circumstance is held invalid, then the remainder of this Order and the application of the

provision to any other person or circumstance shall not be affected by the holding.

22. Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Order for a period of 12 months from the date of this order.

23. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under the authority or control of any of the Defendants, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.


Elizabeth Warren, Clerk of Court

**/s/ Brenda Napier, Deputy Clerk**

10

# CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

   (b) **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).